No. 22-10669

IN THE

# United States Court of Appeals

FOR THE

# Eleventh Circuit

ANDREA JUNCADELLA, EDWARD GOODAN, WILLIAM MAKEHAM, MARK SANDERS, JAIME RODRIGUEZ, ET AL.,

*Plaintiffs-Appellants,*

PATRICK YOUNG, ET AL.,

*Plaintiffs,*

v.

ROBINHOOD FINANCIAL LLC, ROBINHOOD SECURITIES, LLC, ROBINHOOD MARKETS, INC.,

*Defendants-Appellees,*

CITADEL LLC D.B.A CITADEL SECURITIES, ET AL.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
HONORABLE CECILIA M. ALTONAGA, CHIEF U.S. DISTRICT JUDGE
NO. 1:21-MD-02989-CMA

## ANSWERING BRIEF OF DEFENDANTS-APPELLEES

Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Samuel A. Danon
María Castellanos Alvarado
HUNTON ANDREWS KURTH LLP
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
(305) 810-2500

*Attorneys for Defendants-Appellees*

August 29, 2022

**No. 22-10669**
**Juncadella v. Robinhood Financial LLC**

## Certificate of Interested Persons and
## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 26.1-2 and 26.1-3, the undersigned counsel hereby certify as follows:

Defendants-Appellees Robinhood Financial LLC and Robinhood Securities, LLC are wholly owned subsidiaries of Robinhood Markets, Inc. (NASDAQ: HOOD), and no publicly-traded corporation has a 10% or greater ownership interest in Robinhood Financial LLC, Robinhood Securities, LLC or Robinhood Markets, Inc. (collectively, "Robinhood").

The following is a complete list, in alphabetical order, of interested persons:

1.     Altonaga, Cecilia M., Chief U.S. District Judge, Southern District of Florida

2.     Atherton, Blake (counsel for Plaintiffs)

3.     Bird Marella (counsel for Robinhood)

4.     Boies Schiller Flexner LLP (counsel for Plaintiffs)

5.     Burstyn Law PLLC (counsel for Plaintiffs)

6.     Burstyn, Sean Alexander (counsel for Plaintiffs)

7.     Castellanos Alvarado, María (counsel for Robinhood)

8.     Chelin Law Firm (counsel for Plaintiffs)

9.     Cornwell, Jonathan (Plaintiff)

No. 22-10669
**Juncadella v. Robinhood Financial LLC**

10.    Crass, Kevin A. (counsel for Robinhood)

11.    Cravath, Swaine & Moore LLP (counsel for Robinhood)

12.    Daniluk, Joseph (Plaintiff)

13.    Danon, Samuel A. (counsel for Robinhood)

14.    Diessel, Benjamin H. (counsel for Robinhood)

15.    DiMatteo, Daniel J. (counsel for Plaintiffs)

16.    Doroghazi, John M. (counsel for Robinhood)

17.    Ferraro, James L. (counsel for Plaintiffs)

18.    Ferraro, James Louis Jr. (counsel for Plaintiffs)

19.    Friday Eldredge & Clark (counsel for Robinhood)

20.    Furst, Rachel W. (counsel for Plaintiffs)

21.    Goldfarb, Carl (counsel for Plaintiffs)

22.    Gonzalez, Sammy (Plaintiff)

23.    Goodan, Edward (Plaintiff)

24.    Grossman Roth Yaffa Cohen, PA (counsel for Plaintiffs)

25.    Gutierrez, Mathew Daniel (counsel for Plaintiffs)

26.    Haynes & Boone, LLP (counsel for Robinhood)

27.    Hill, Cody (Plaintiff)

28.    Hill Ward & Henderson, PA (counsel for Robinhood)

No. 22-10669
**Juncadella v. Robinhood Financial LLC**

29.    Hills, Brianna (counsel for Plaintiffs)

30.    Hunton Andrews Kurth LLP (counsel for Robinhood)

31.    Huynh, Andrew D. (counsel for Robinhood)

32.    Juncadella, Andrea (Plaintiff)

33.    Kang, Grace W. (counsel for Robinhood)

34.    Krasowski, Patryck (Plaintiff)

35.    Kunselman, Shane (counsel for Plaintiffs)

36.    Kwatinetz, Jeffrey E. (counsel for Plaintiffs)

37.    Law Office of Craig C. Reilly (counsel for Robinhood)

38.    Makeham, William (Plaintiff)

39.    Manatt Phelps & Phillips, LLP (counsel for Robinhood)

40.    Membiela, Gustavo Javier (counsel for Robinhood)

41.    Moody, Julie (Plaintiff)

42.    Murray, Elizabeth Robben (counsel for Robinhood)

43.    Novick, Angela (counsel for Plaintiffs)

44.    Orsini, Kevin J. (counsel for Robinhood)

45.    Panuccio, Jesse (counsel for Plaintiffs)

46.    Pessah Law Group, PC (counsel for Plaintiffs)

47.    Prunean, Paul (Plaintiff)

No. 22-10669
**Juncadella v. Robinhood Financial LLC**

48.  Reilly, Craig Crandall (counsel for Robinhood)

49.  Rim, Naeun (counsel for Robinhood)

50.  Robinhood Markets, Inc. (NASDAQ: HOOD) (Defendant)

51.  Robinhood Financial LLC (Defendant)

52.  Robinhood Securities, LLC (Defendant)

53.  Rodriguez, Jaime (Plaintiff)

54.  Rutenberg, Craig S. (counsel for Robinhood)

55.  Ryan, Antony L. (counsel for Robinhood)

56.  Salas, Natalia Maria (counsel for Plaintiffs)

57.  Sanders, Mark (Plaintiff)

58.  Sukiennik, Brittany L. (counsel for Robinhood)

59.  The Ferraro Law Firm, PA (counsel for Plaintiffs)

60.  The Law Office of Jeffrey Kwatinetz PC (counsel for Plaintiffs)

61.  Volker, Odean L. (counsel for Robinhood)

62.  Waggoner, Dennis P. (counsel for Robinhood)

63.  Webb, Joshua C. (counsel for Robinhood)

64.  Wiggin & Dana, LLP (counsel for Robinhood)

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Robinhood respectfully submits that oral argument is not necessary to address the issues presented by this appeal, and that this Court should affirm the District Court's dismissal with prejudice of Plaintiffs-Appellants' claims.

.

## **TABLE OF CONTENTS**

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF ISSUES ...........................................................................1

INTRODUCTION .......................................................................................1

STATEMENT OF THE CASE......................................................................3

I.      Statement of Facts...........................................................................3

        A.      Overview of Robinhood's Nondiscretionary Brokerage
                Services. ..............................................................................3

        B.      Plaintiffs Agree That Robinhood Is a Nondiscretionary Broker
                with Unfettered Discretion To Decline Transactions. ..........4

        C.      The Mechanics of Securities Trading .....................................5

        D.      The Unprecedented Market Volatility of January 2021........6

II.     Course of Proceedings Below..........................................................11

SUMMARY OF THE ARGUMENT ........................................................13

ARGUMENT ...........................................................................................15

I.      Plaintiffs' Claims Are Not Viable Under California Or Florida Law...........15

II.     The District Court Properly Dismissed Plaintiffs' Breach of Fiduciary
        Duty Claim (Count III). ................................................................17

        A.      Robinhood Does Not Owe Customers a General Fiduciary
                Duty. ..................................................................................18

        B.      There Are No Other Reasons to Impose Generalized Fiduciary
                Duties on Robinhood.............................................................26

C.    Robinhood Securities, as a Clearing Broker, Does Not Owe Fiduciary Duties. ................................................................31

III.    The District Court Properly Dismissed Plaintiffs' Negligence Claims (Counts I and II)...................................................................32

A.    Robinhood Owes Its Customers Contractual Obligations, Not a Generalized Tort Duty of Care..........................................33

B.    Plaintiffs Cannot Create a Tort Duty Under California Law. ............38

C.    Plaintiffs Cannot Create a Tort Duty Under Florida Law..................45

IV.    Robinhood Did Not Breach Any Implied Covenant of Good Faith and Fair Dealing (Count V). .................................................................49

V.    Robinhood Did Not Breach Any Implied Duty of Care (Count IV). ...........53

VI.    Robinhood Markets Did Not Tortiously Interfere with the Robinhood Customer Agreement (Count VI). .................................................54

VII.    Leave To Amend Should Be Denied.............................................55

CONCLUSION ...................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004) .........................................................47

*Apollo Cap. Fund LLC v. Roth Cap. Partners LLC*,
  70 Cal. Rptr. 3d 199 (Ct. App. 2007) ..........................................19, 27

*Arndt v. Twenty-One Eighty-Five, LLC*,
  448 F. Supp. 3d 1310 (S.D. Fla. 2020) ..............................................16

*Bankest Imports, Inc. v. ISCA Corp.*,
  717 F. Supp. 1537 (S.D. Fla. 1989) ............................................29, 30

*Barbara A. v. John G.*,
  193 Cal. Rptr. 422 (Ct. App. 1983) ...................................................30

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
  33 Cal. Rptr. 3d 680 (Ct. App. 2019) ................................................42

*Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*,
  859 F. Supp. 2d 1138 (E.D. Cal. 2012) .............................................51

*Biakanja v. Irving*,
  320 P.2d 16 (Cal. 1959) ....................................................................42

*Bily v. Arthur Young & Co.*,
  834 P.2d 745 (Cal. 1992) ..................................................................32

*\*Brehm v. 21st Century Ins. Co.*,
  83 Cal. Rptr. 3d 410 (Ct. App. 2018) ................................................49

*In re Brinker Data Incident Litig.*,
  2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .....................................46

*Brown v. California Pension Administrators & Consultants, Inc.*,
  52 Cal. Rptr. 2d 788 (Ct. App. 1996) ................................................23

*Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Ass. Co.*,
  73 Cal. Rptr. 2d 182 (Ct. App. 1998) ................................................40

*Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,
769 F.2d 561 (9th Cir. 1985) ................................................................. 20

*Carleton v. Tortosa*,
17 Cal. Rptr. 2d 734 (Ct. App. 1993) ..................................................... 20

*\*Clay Elec. Co-op., Inc. v. Johnson*,
873 So. 2d 1182 (Fla. 2003) ..................................................... 35, 45, 46, 48

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
673 P.2d 660 (Cal. 1983) ........................................................................ 30

*\*Cooper v. Meridian Yachts, Ltd.*,
575 F.3d 1151 (11th Cir. 2009) ........................................................ 16, 17

*D.A.M. v. Barr*,
474 F. Supp. 3d 45 (D.D.C. 2020) ........................................................... 9

*Delgado v. Trax Bar & Grill*,
113 P.3d 1159 (Cal. 2005) ...................................................................... 42

*Deloitte & Touche v. Gencor Indus., Inc.*,
929 So. 2d 678 (Fla. 5th DCA 2006) ...................................................... 16

*Duffy v. Cavalier*,
264 Cal. Rptr. 740 (Ct. App. 1989) ....................................................... 19

*East River Steamship Corp. v. Transamerica Delaval, Inc.*,
476 U.S. 858 (1986) ............................................................................... 36

*\*Erlich v. Menezes*,
981 P.2d 978 (Cal. 1999) ................................................................. 33, 44

*\*Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*,
983 So. 2d 1175 (Fla. 2d DCA 2008) ..................................................... 47

*FDIC v. Verex Assurance, Inc.*
3 F.3d 391 (11th Cir. 1993) .................................................................... 43

*Fioretti v. Mass. Gen. Life Ins. Co.*,
53 F.3d 1228 (11th Cir. 1995) ................................................................ 15

*First Union Brokerage v. Milos*,
   717 F. Supp. 1519 (S.D. Fla. 1989) .......................................................23

*Fleming v. Charles Schwab Corp.*,
   878 F.3d 1146 (9th Cir. 2017) ...............................................................41

*Florida Power & Light Co. v. Westinghouse Electric Corp.*,
   510 So. 2d 899 (Fla. 1987) ....................................................................36

*\*Gochnauer v. A.G. Edwards & Sons, Inc.*,
   810 F.2d 1042 (11th Cir. 1987) ......................................19, 23, 27, 29

*\*Guz v. Bechtel Nat'l Inc.*,
   8 P.3d 1089 (Cal. 2000) .........................................................................49

*Haggarty v. Wells Fargo Bank, N.A.*,
   2011 WL 445183 (N.D. Cal. Feb. 2, 2011) ..........................................51

*Hawrych v. Nutra-Luxe M.D., LLC*,
   2022 WL 1187136 (M.D. Fla. Apr. 21, 2022)......................................37

*Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.*,
   344 F. Supp. 3d 1111 (N.D. Cal. 2018).................................................51

*Hollingsworth v. Com. Union Ins. Co.*,
   256 Cal. Rptr. 357 (Ct. App. 1989) .......................................................44

*Indep. Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc.*,
   157 F.3d 933 (2d Cir. 1998) ..................................................................19

*Ingmire v. Target Corp.*,
   520 Fed. App'x 832 (11th Cir. 2013) .............................................14, 43

*Irving v. Mazda Motor Corp.*,
   136 F.3d 764 (11th Cir. 1998) ........................................................39, 47

*Issakhani v. Shadow Glen Homeowners Ass'n, Inc.*,
   278 Cal. Rptr. 3d 270 (Ct. App. 2021) ............................................39, 41

*\*Ixchel Pharma, LLC v. Biogen, Inc.*,
   470 P.3d 571 (Cal. 2020) ................................................................53, 54

*J'Aire Corp. v. Gregory*,
  598 P.2d 60 (Cal. 1979) ...................................................................42

*Kenosha Unified S. Dist. v. Stifel Nicolaus & Co.*,
  607 F. Supp. 2d 967 (E.D. Wis. 2009) ............................................40

*Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*,
  903 F. Supp. 479 (S.D.N.Y. 1995) ...................................................47

*Kipnis v. Bayerische Hypo-und Vereinsbank, AG*,
  2017 WL 11103938 (S.D. Fla. June 26, 2017)................................30

*La Grasta v. First Union Sec., Inc.*,
  358 F.3d 840 (11th Cir. 2004) ...........................................................7

*Lamm v. State St. Bank & Tr.*,
  749 F.3d 938 (11th Cir. 2014) .........................................................35

*Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  461 F. Supp. 951 (E.D. Mich. 1978), *aff'd*, 647 F.2d 165 (6th Cir. 1981) ..19, 27

*Lucarelli Pizza & Deli v. Posen Constr., Inc.*,
  17 So. 3d 1092 (Fla. 2d DCA 2015)................................................45

*Mars v. Wedbush Morgan Sec., Inc.*,
  283 Cal. Rptr. 238 (Ct. App. 1991) .................................................31

*Martinez Tapia v. Chase Manhattan Bank, N.A.*,
  149 F.3d 404 (5th Cir. 1998) ...........................................................19

*McCain v. Florida Power Corp.*,
  593 So. 2d 500 (Fla. 1992) ........................................................46, 48

*Medmoun v. Home Depot U.S.A., Inc.*,
  2022 WL 1443919 (M.D. Fla. May 7, 2022) ...................................37

*Mednax Services, Inc. Customer Data Security Breach Litig.*,
  2022 WL 1468057 (S.D. Fla. May 10, 2022)...................................46

*Meyers v. Guar. Sav. & Loan Ass'n*,
  144 Cal. Rptr. 616 (Ct. App. 1978) .....................................20, 26, 27

*Misabec Mercantile, Inc. v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.,
  853 F.2d 834 (11th Cir. 1988) ..........................................................20, 26, 27, 28

*Monroe v. Sarasota Cnty. Sch. Bd.,
  746 So. 2d 530 (Fla. 2d DCA 1999)......................................................32, 35, 48

Moreno v. Sanchez,
  131 Cal. Rptr. 2d 684 (Ct. App. 2003) ............................................................45

Muchnick v. Goihman,
  245 So. 3d 978 (Fla. 3d DCA 2018)..................................................................46

N. Counties Eng'g, Inc. v. State Farm Gen. Ins. Co.,
  169 Cal. Rptr. 3d 726 (Ct. App. 2014) .............................................................44

Pinchasov v. Robinhood Financial LLC,
  2021 WL 4991144 (S.D. Fla. Apr. 22, 2021)..............................................24, 46

Pinchasov v. Robinhood Financial LLC,
  2021 WL 4991238 (S.D. Fla. Sept. 10, 2021)...................................................24

Perdue v. Crocker Nat'l Bank,
  702 P.2d 503 (Cal. 1985) ..................................................................................51

Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.,
  2015 WL 13309286 (C.D. Cal. Jun. 22, 2015)..................................................44

*Petersen v. Sec. Settlement Corp.,
  277 Cal. Rptr. 468 (Ct. App. 1991) ......................................................18, 23, 31

Robinson Helicopter Co. v. Dana Corp.,
  102 P.3d 268 (Cal. 2004)..................................................................................43

*S. Cal. Gas Leak Cases,
  441 P.3d 881 (Cal. 2019)...............................................................34, 38, 42, 48

Scolieri v. John Hancock Life Ins. Co. (U.S.A.),
  2017 WL 700215 (M.D. Fla. Feb. 22, 2017)....................................................30

*Series AGI W. Linn of Appian Grp. Invs. DE, LLC v. Eves,
  158 Cal. Rptr. 3d 193 (Ct. App. 2013) ........................................................52, 53

*SFM Holdings, Ltd. v. Banc of America Sec., LLC,
  600 F.3d 1334 (11th Cir. 2010) ..............................................................20, 28, 31

*Sheen v. Wells Fargo Bank, N.A.,
  505 P.3d 625 (Cal. 2022) ..............................................................33, 34, 39, 43

Siemonsma v. Mut. Diversified Emps. Fed. Credit Union,
  2011 WL 1485979 (C.D. Cal. Apr. 19, 2011) ....................................................30

SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A.,
  584 So. 2d 1051 (Fla. 2d DCA 1991) ................................................................20

Stonebrae, L.P. v. Toll Bros., Inc.,
  2010 WL 1460208 (N.D. Cal. Apr. 8, 2010) ................................................50, 51

*Tank Tech, Inc., v. Valley Tank Testing, L.L.C.,
  244 So. 3d 383 (Fla. 2d DCA 2018) ............................................................37, 38

Third Story Music, Inc. v. Waits,
  48 Cal. Rptr. 747 (Ct. App. 1995) ....................................................................51

Tiara Condominium Association, Inc. v. Marsh & McLennan Cos.,
  110 So. 3d 399 (Fla. 2013) ........................................................................35, 36

Twomey v. Mitchum, Jones & Templeton, Inc.,
  69 Cal. Rptr. 222 (Ct. App. 1968) ..............................................................45, 50

*Underwriters at Int. v. All Logistics Grp., Inc.,
  483 F. Supp. 3d 1199 (S.D. Fla. 2020) ........................................................33, 35

Universal Express, Inc. v. SEC,
  177 F. App'x 52 (11th Cir. 2006) ....................................................................11

Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.,
  464 F. Supp. 3d 634 (S.D.N.Y. 2020) ................................................................47

*Wallace v. Dean,
  3 So. 3d 1035 (Fla. 2009) ........................................................................46, 48

*Ward v. Atlantic Sec. Bank,
  777 So. 2d 1144 (Fla. 3d DCA 2001) ..........................................................22, 27

*World Vacation Travel, S.A., de C.V. v. Brooker*,
    799 So. 2d 410 (Fla. 3d DCA 2001) ....................................................................16

**Statutes, Regulations & Rules**

15 U.S.C. §78bb ............................................................................................41

15 U.S.C. §78f ...............................................................................................25

17 C.F.R. §240.19b-3 .....................................................................................25

Cal. Civil Code §1714 ....................................................................................39

Fed. R. Evid. 201 ............................................................................................9

FINRA R. 3110 .......................................................................................40, 46

FINRA R. 4370 .......................................................................................40, 46

FINRA R. 5310 .......................................................................................41, 46

**Other Authorities**

FINRA, Regulatory Notice 21-12 (Mar. 18, 2021),
    https://www.finra.org/rules-guidance/notices/21-12 .........................................41

FINRA, "Business Continuity Planning FAQ," https://www.finra.org/rules-
    guidance/key-topics-business-continuity-planning /faq .....................................41

Nasdaq, *Market Activity*, https://www.nasdaq.com/market-activity ...................7, 8

Restatement (Second) of Torts §323 .......................................................................42

Restatement (Second) of Torts §324A......................................................................42

Restatement (Third) of Torts: Liab. for Econ. Harm §1 ...........................................34

Restatement (Third) of Torts: Liab. for Econ. Harm §3 ...........................................33

Restatement (Third) of Torts: Liab. for Econ. Harm §4..................................44, 45

SEC, *Thinking About Investing in the Latest Hot Stock?* (Jan. 30, 2021),
    https://www.sec.gov/oiea/investor-alerts-and-bulletins/risks-short-term-
    trading-based-social-media-investor-alert .........................................................11

## STATEMENT OF ISSUES

Whether this Court should affirm the District Court's Opinion (A535) dismissing the Complaint (A263) with prejudice, in which the District Court held correctly that Plaintiffs-Appellants ("Plaintiffs") cannot plead either tort or quasi-contract claims against Robinhood, their nondiscretionary broker, for declining to accept securities purchase orders where Plaintiffs expressly agreed the broker could decline such orders.

## INTRODUCTION

The market events concerning the so-called "meme-stock short squeeze" underlying this litigation were unprecedented and the subject of extensive public attention; however, the legal issues that compelled the District Court to dismiss the Complaint with prejudice are neither novel nor controversial. Robinhood—like many other brokers—implemented restrictions on the purchase of certain securities (the "Suspended Stocks") that were driving outsized regulatory collateral calls for Robinhood and other brokers during the last week of January 2021. Plaintiffs take issue with this and claim that Robinhood was obligated to accept purchase orders for the Suspended Stocks regardless of the extraordinary market volatility, the size of the collateral calls or the additional risks that accepting purchase orders would create for all Robinhood customers.

A single fact undermines Plaintiffs' entire case: when they became Robinhood customers, Plaintiffs entered into a contract that expressly gave Robinhood the unfettered discretion to do exactly what it did in January 2021. Specifically, the contract provided that "Robinhood may at any time, in its sole discretion and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (Agmt. §5.F.) Thus, far from requiring Robinhood to accept all orders, the contract contained an express provision permitting Robinhood to restrict purchases at any time, in any security, for any reason. This explains why Plaintiffs never alleged a breach of contract claim.

Plaintiffs dramatically characterize their appeal as a fight for "whether the titans of Big Tech are subject to the same rules and duties as conventional stockbrokers or whether they are subject to no rules at all," and claim the District Court "took the no-rules approach." (Br. 2.) But there is no truth behind this hyperbole. What the District Court *actually* did was apply to Robinhood the same common-law rules that apply to *all* brokers, regardless of whether the customer communicates with the broker in person, by telephone call or through a mobile online platform. As a nondiscretionary broker that did not trade on its customers' behalf and offered no investment advice, Robinhood owed no general fiduciary duties to its customers. That is not because Robinhood is a "tech titan." It is

because that has been the law applied to nondiscretionary stockbrokers since long before Robinhood existed.

In the early morning hours of January 28, 2021, Robinhood made the difficult decision to restrict purchases of certain securities after it received an unprecedented collateral call of $3 billion, which represented an approximately twenty-four fold increase from earlier in the week, and more than four times what was required the day before. Robinhood was far from alone, as other brokers made similar decisions to restrict trading for similar reasons. Robinhood had the right to make that decision under the governing contract. In short, no theory of tort or quasi-contract can impose liability on Robinhood for taking the very action the contract permitted.

As the District Court held, "Plaintiffs' claims fail because entertaining them would sanction a departure from the parties' own agreement and California and Florida tort-law principles." (Op. 64.) Defendants-Appellees ("Defendants or "Robinhood") respectfully request that this Court affirm the Opinion.

## STATEMENT OF THE CASE

### I.    STATEMENT OF FACTS.

#### A.    Overview of Robinhood's Nondiscretionary Brokerage Services.

Robinhood is a financial services company founded in 2013 to democratize finance for all. (Compl. ¶¶1, 108.) Robinhood's securities business currently comprises three entities: Robinhood Markets, Inc. ("Robinhood

Markets"), which wholly owns Robinhood Financial LLC ("Robinhood Financial"), the customer-facing introducing broker, and Robinhood Securities, LLC ("Robinhood Securities"), the clearing broker. (*Id.* ¶¶85-94.) Robinhood provides commission-free brokerage services through its intuitive mobile trading application and website.

Through Robinhood's platform, customers can submit trade orders for thousands of available securities for review and processing by Robinhood at no charge. Eligible customers may access additional investment tools, such as margin and options trading, to use in their investment strategies, also without paying any commissions to Robinhood. (*Id.* ¶111.)

B.    <u>Plaintiffs Agree That Robinhood Is a Nondiscretionary Broker with Unfettered Discretion To Decline Transactions.</u>

Before using the Robinhood application, Plaintiffs were first required to review and agree to the terms of Robinhood's Customer Agreement (the "Agreement"), which set forth Robinhood's obligations to its customers. Each of the Plaintiffs agreed that their accounts were "self-directed" (Agmt. §5.A), meaning that Robinhood would not manage their accounts or invest funds on their behalf. Plaintiffs also agreed that Robinhood did not "(1) provide investment advice in connection with [Plaintiffs'] Account[s]; (2) recommend any security, transaction or order; (3) solicit orders; (4) act as a market maker in any security; [or] (5) make discretionary trades." (*Id.*)

4

The Agreement also expressly provided that Robinhood may, in its sole discretion, decline to accept customers' trade orders submitted for processing and execution:

- "Robinhood may at any time, in its sole discretion and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (*Id.* §5.F); and

- "Robinhood may at any time, at its sole discretion and without prior notice to [the customer]: (i) prohibit or restrict [the customer's] access to the use of the App or the Website or related services and [the customer's] ability to trade, (ii) refuse to accept any of [the customer's] transactions, (iii) refuse to execute any of [the customer's] transactions, or (iv) terminate [the customer's] Account." (*Id.* §16.)

In short, all Robinhood customers—including Plaintiffs—agreed that Robinhood was under no obligation to accept and process every trade order the customer submitted.

C.    The Mechanics of Securities Trading.

Securities trading is a multi-step process.  When a customer submits a trade order to Robinhood Financial, and it accepts and agrees to execute the order (*id.* §16), Robinhood Financial sends the order to Robinhood Securities for processing (Compl. ¶112).  Robinhood Securities, in turn, routes the order to one of several market makers for execution.  (*Id.* ¶140.)  Once the order is executed, the market maker returns the order to Robinhood Securities, which then routes the trade to a clearinghouse for clearance and settlement.  (*Id.* ¶¶152-153.)  For equities, the main clearinghouse in the United States is the National Securities

5

Clearing Corporation (the "NSCC"), which is part of the Depository Trust Clearing Corporation (the "DTCC").  Both entities are regulated by the SEC.

To ensure that market participants will be able to satisfy their obligations in connection with a trade, Robinhood Securities, as well as other clearing brokers, are required to post collateral with the NSCC until a trade settles two days later ("T+2").  (*Id.* ¶156.)  These collateral requirements are known as deposit requirements, and the NSCC provides regular statements reflecting a broker's capital surplus or deficit.  (*Id.*)  Each trading day, clearing brokers must meet their deposit requirements set by the NSCC no later than 10:00 a.m. eastern time.  (*Id.*)  While deposit requirements are typically set according to formulas, the NSCC may exercise discretion in determining a broker's deposit requirements.  (*Id.* ¶223.)  For example, the NSCC may choose to apply volatility multiples or special charges that can increase deposit requirements when markets are tumultuous.  (*Id.* ¶¶156, 158.)  A failure to meet NSCC deposit requirements on a given day could result in liquidation of Robinhood Securities' full portfolio, causing significant damage to its customers and its business.  (*Id.* ¶155.)

D.    The Unprecedented Market Volatility of January 2021.

In January 2021, securities markets entered a period of unprecedented volatility.  Retail investors, banding together through forums like WallStreetBets on Reddit, drove a massive short squeeze involving certain stocks they perceived

to be the target of short selling by hedge funds ("meme stocks").[1]  (*Id.* ¶¶10, 183-190, 198, 201.)  Their activity resulted in extreme market volatility, with dramatic increases in trading prices.  (*Id.* ¶¶185, 191.)  For example, on January 27, GME's price closed at $347.51 per share, a 707.6% increase from just five trading days earlier.[2]



---

[1] Plaintiffs claim the "Suspended Stocks" are:  GameStop Corporation (GME), BlackBerry Ltd. (BB), Nokia (NOK), AMC Entertainment Holdings, Inc. (AMC), American Airlines Group, Inc. (AAL), Bed Bath & Beyond, Inc. (BBBY), Castor Maritime Inc. (CTRM), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Sundial Growers, Inc. (SNDL), Tootsie Roll Industries, Inc. (TR), and Trivago NV (TRVG).  (Compl. ¶4.)

[2] *See Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited Aug. 28, 2021).  The Court may take judicial notice of this stock information.  *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 842 (11th Cir. 2004) (taking judicial notice of stock information at the motion to dismiss stage).

Indeed, in the span of just five trading days (from January 21 to January 27, 2021), the total daily trading volume for the meme stocks increased eightfold from 863 million to 6.95 billion shares.[3]



As the unprecedented volatility unfolded, Robinhood monitored the situation to manage its resources to meet customer trading demand.  (*Id.* ¶201.)[4] For example, in the days leading up to January 28, Robinhood Securities increased

---

[3] *See Market Activity*, Nasdaq, https://www.nasdaq.com/market-activity (last visited Aug. 28, 2022).  The Court may take judicial notice of stock information.  *See supra* note 2.

[4] For example, the unprecedented level of options trades strained Robinhood Securities' systems (a "redline") in preparing its daily file submission to the Options Clearing Corporation (the "OCC") on January 27, 2021.  The OCC uses that submission to calculate deposit requirements, and delays in the submission can lead to liquidation of customer positions. (Compl. ¶201.)  Plaintiffs erroneously suggest that this "redline" issue related to whether Robinhood Securities could meet its deposit requirements prior to the NSCC's January 28, 2021 collateral call.  (Br. 15-17, 41-42.)

margin requirements for volatile securities such as GME to 100%,[5] which meant that a customer needed sufficient funds to pay for such shares in full, rather than being able to buy shares on credit, and that customers could not use such shares as collateral to buy other securities on credit.  (*Id.* ¶¶193-202, 249.)  But as the volatility in the relevant stocks continued to increase, so too did Robinhood Securities' deposit requirements.  On the days leading up to January 28, those approximate daily deposit requirements were as follows:

- January 25, 2021, 5:19 AM UTC deposit requirement:  $125 million;[6] Robinhood Securities had a deposit surplus of $11 million *(Id.* ¶208).

- January 26, 2021, 8:34 AM UTC deposit requirement:  $291 million (Tenev Testimony at 10); Robinhood Securities had a deposit deficit of $85 million (Compl. ¶210).

- January 27, 2021, 8:20 AM UTC deposit requirement:  $282 million (Tenev Testimony at 10); Robinhood Securities had a deposit surplus of $11 million (Compl. ¶211).

---

[5] Plaintiffs imply Robinhood Securities President James Swartwout "sold [his] AMC" on January 26, 2021, the day before Robinhood moved "GME to [a] 100%" margin requirement, because Robinhood "knew" "that its risk management system was strained."  (Compl. ¶12.)  This is without basis, as Plaintiffs do not allege *any* restrictions were placed on AMC stock until January 28—two trading days later.  (*Id.* ¶15.)

[6] *See Virtual Hearing – Game Stopped?  Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, 117th Cong. at 10 (2021) (statement of Vladimir Tenev, Chief Executive Officer, Robinhood Markets, Inc.), https://financialservices.house.gov/uploadedfiles/hhrg-117-ba00-wstate-tenevv-20210218.pdf ("Tenev Testimony").  The Court may take judicial notice of the approximate deposit requirements described in Mr. Tenev's testimony in the days leading up to January 28, 2021.  *See D.A.M. v. Barr*, 474 F. Supp. 3d 45, 55 n.12 (D.D.C. 2020) (taking judicial notice of congressional testimony because it "is not subject to reasonable dispute" (quoting Fed. R. Evid. 201(b)(2))).  Plaintiffs themselves also cite Mr. Tenev's testimony to support their allegations regarding Robinhood's decision to impose limited purchase restrictions.  (*See* Compl. ¶235.)

- January 27, 2021, 8:03 PM UTC deposit requirement:  $690 million (Tenev Testimony at 10); Robinhood Securities had a deposit deficit of $408 million (Compl. ¶213).

Robinhood Securities promptly paid any deficit in its deposit requirement.

Before dawn on January 28th, Robinhood received notice that its NSCC deposit requirements had jumped dramatically to more than $3 billion.  (*Id.* ¶215.)  Faced with an unprecedented capital call, Robinhood Securities made the difficult decision to set the small number of Suspended Stocks to a "position close only" ("PCO"), which would restrict new purchases of the Suspended Stocks, while allowing Robinhood customers to exit their positions if they so chose.  (*Id.* ¶¶219, 240.)  Shortly thereafter, the NSCC reduced Robinhood Securities' deposit requirements.  (*Id.* ¶¶223, 225.)

Robinhood Securities was not alone in imposing restrictions on meme stocks during this period of intense volatility.  For example, in the days leading up to January 28, Charles Schwab also imposed restrictions on meme stocks.  (*Id.* ¶253.)  Likewise, Apex Clearing Corporation imposed restrictions, which led many of its introducing broker customers, such as Ally, Dough, Public.com, SoFi, Stash, Tastyworks and Webull, to do the same.  (Initial Compl. (A108) ¶¶234, 236.)

After implementing restrictions of customer purchases of meme stocks, Robinhood worked quickly to remove the restrictions, first removing its PCO restrictions the evening of January 28, 2021.  Beginning the next day,

10

Robinhood then set daily purchase limits for stocks and options on volatile symbols, before easing those daily purchase limits and then lifting them fully by February 5, 2021.  (Compl. ¶¶256, 259, 261, 266.)  Robinhood also took steps both to raise new capital and expand its line of credit to ensure it could meet any other outsized deposit requirements.  Robinhood raised $3.4 billion from investors in just a few days in late January 2021.  (*Id.* ¶234.)

As the market and public reacted to this unprecedented volatility, the SEC published guidance, releasing an investor alert and bulletin warning about the risks of short-term trading based on social media.  (Op. 14-15.)[7]  In addition, the SEC acknowledged that "broker-dealers [such as Robinhood] may reserve the ability to reject or limit customer transactions" for "legal, compliance, or risk management reasons" and that such ability is "typically discussed in the customer account agreement."  (SEC Statement.)

## II.    COURSE OF PROCEEDINGS BELOW.

Various lawsuits against Robinhood and other retail brokerages and securities market participants were filed around the country and consolidated for pretrial purposes in a multidistrict litigation captioned *In re January 2021 Short*

---

[7] *See Thinking About Investing in the Latest Hot Stock?*, SEC (Jan. 30, 2021), https://www.sec.gov/oiea/investor-alerts-and-bulletins/risks-short-term-trading-based-social-media-investor-alert ("SEC Statement").  The Court may take judicial notice of the SEC Statement for the fact the statement was made. *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006).

*Squeeze Trading Litigation* ("MDL").  The District Court organized the claims into four "tranches," appointed interim lead plaintiffs and counsel for each tranche and ordered lead plaintiffs to file superseding complaints.  (SA001, SA008.)  The District Court also ordered Robinhood and other MDL defendants to produce tens of thousands of pages of documents previously produced to regulators (SA008), and granted the MDL plaintiffs time to review those documents prior to filing consolidated complaints (SA010).

Plaintiffs represent the "Robinhood Tranche" and brought state-law claims against Robinhood.  On July 26, 2021, Plaintiffs filed the Initial Complaint, which Robinhood moved to dismiss on August 30, 2021 (A182).  In lieu of opposing Robinhood's first motion to dismiss, Plaintiffs filed the instant Complaint, against which Robinhood filed the Motion to Dismiss ("Motion" or "MTD") (A383), Plaintiffs filed their MTD Opposition (A431) and Robinhood filed its MTD Reply (A494).

On January 27, 2022, the District Court granted Robinhood's Motion in its entirety with prejudice, reasoning that "both California and Florida law require courts to respect and enforce the terms of valid contracts" and the "terms permitted Defendants to do precisely what they did."  (Op. 64.)  Plaintiffs appealed.

## SUMMARY OF THE ARGUMENT

Plaintiffs cannot recast a losing contract claim into viable tort and quasi-contractual claims.  Plaintiffs—like all Robinhood customers—accepted the Agreement's terms, which expressly permitted Robinhood to decline to accept and execute customer trade orders.  Plaintiffs do not claim that the Agreement is unenforceable, and indeed, asserted claims based on the Agreement's enforceability.  Whether Florida or California law applies, Plaintiffs' claims fail.

*First*, Plaintiffs' fiduciary duty claim (Count III) fails because no Robinhood entity owed Plaintiffs a general fiduciary duty.  Under both Florida and California law, nondiscretionary brokers do not owe customers general fiduciary duties unless they provide investment advice.  Robinhood did not decide on trades on Plaintiffs' behalf, nor did it provide investment advice to Plaintiffs.  Therefore, rather than owe general fiduciary duties, Robinhood was an agent with limited duties that arose only in the *execution* of any transaction that it chose to accept.  Because the Agreement granted Robinhood discretion to decline to accept or execute customer trade orders, Robinhood acted within the scope of its authority, and none of the alleged conduct violated the limited duties that existed by virtue of contract and common law.  Robinhood Securities, as a clearing broker, also did not owe any fiduciary duties to Plaintiffs.  (*See* Section II.)

13

*Second*, Plaintiffs' negligence claims (Counts I and II) fail because Robinhood did not owe Plaintiffs any duty to avoid inflicting economic harm. Both Florida and California law decline to expand a duty in negligence claims to cover economic loss particularly where, as here, the claims arise from a valid contract. Plaintiffs fail to plead any exception to these common-law negligence principles, and dismissal of their claims should be affirmed. (*See* Section III.)

*Third*, Plaintiffs' good faith and fair dealing (Count V) and implied duty of care (Count IV) claims fail because the express terms of the Agreement permitted the conduct at issue. California law—which Plaintiffs concede governs these quasi-contract claims—does not permit such claims to override the express terms of the contract. (*See* Sections IV and V.)

*Fourth*, Plaintiffs' tortious interference claim against Robinhood Markets (Count VI) fails both because it is derivative of the quasi-contractual claims, which fail for the reasons just described, and because Plaintiffs fail to allege any intentional conduct by Robinhood Markets to breach or disrupt any contractual relationship between the other Robinhood entities and Plaintiffs.[8] (*See* Section VI.)

---

[8] Plaintiffs declined to address their Civil Conspiracy claim (Count VII) and therefore have abandoned this claim. *See Ingmire v. Target Corp.*, 520 Fed. App'x 832, 833 (11th Cir. 2013).

*Fifth*, the District Court appropriately granted the Motion with prejudice and denied Plaintiffs leave to amend.  No further factual allegations can bolster Plaintiffs' inability to plead cognizable tort duties or permit Plaintiffs to circumvent the express language of the Agreement.  The Court should affirm the District Court's dismissal with prejudice.

## **ARGUMENT**

### I.    **PLAINTIFFS' CLAIMS ARE NOT VIABLE UNDER CALIFORNIA OR FLORIDA LAW.**

The parties agree that Plaintiffs' quasi-contractual claims (Counts IV and V) are governed by California law.  (Br. 21 n.4.)  With respect to the remaining claims—which sound in tort—the parties agree that the District Court properly determined that there is no true conflict between Florida and California law.  (Op. 20-21); *see Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 1995) (holding that "court[s] should avoid the conflicts question" where "the laws of the competing states are substantially similar").  Thus, the District Court properly dismissed Plaintiffs' claims regardless of whether California or Florida law applied.

Plaintiffs do not suggest that the outcome differs depending on which law applies, but instead argue that the District Court erred in determining the content of both California and Florida law.  (Br. 22.)  In the alternative, Plaintiffs argue that Florida law governs if there is a conflict.  (*Id.*)  Therefore, it is Plaintiffs'

15

position that *if* the Court determines that one of their tort claims is viable under Florida law but *not* California law, the Court should engage in a conflicts analysis that Plaintiffs contend would result in the application of Florida law.  No such scenario exists because Plaintiffs' claims fail under the law of both states for the reasons set forth below.  Accordingly, no further conflicts analysis is necessary, and this Court should affirm the District Court's dismissal of Plaintiffs' claims.

In any event, Plaintiffs are wrong that Florida law would govern. California law governs because the Agreement that each Plaintiff executed includes an explicit California choice-of-law provision, governing "[t]his Agreement and all transactions made in [a customer's] Account."  (Agmt. §37.K.) This is a broad provision that applies to torts as well as breach-of-contract claims. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162-63 (11th Cir. 2009) (finding choice-of-law provision encompassing more than "this [agreement]" applied to tort claims); *see also Arndt v. Twenty-One Eighty-Five, LLC*, 448 F. Supp. 3d 1310, 1315-21 (S.D. Fla. 2020) (applying choice-of-law provision to all claims relating to the agreement).[9]

---

[9] Robinhood Financial and Robinhood Securities are parties to the Agreement, but their parent, Robinhood Markets, is not.  Plaintiffs' claims against Robinhood Markets are still governed by the Agreement's choice-of-law provision.  Florida courts have recognized that forum selection terms can be enforced by non-signatories where, as here, there is a close relationship between the non-signatory and the parties.  *See, e.g.*, *World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410, 412-13 (Fla. 3d DCA 2001) (finding non-signatories could enforce forum selection clause due to the "nature of the commercial relationship of the parties"

Plaintiffs' argument that the phrase "all transactions" encompasses tort claims for transactions that are executed, but not for transactions that are not executed (Br. 22-23), is an implausible construction of the Agreement that would result in inconsistent choice-of-law results for similar factual circumstances. Plaintiffs do not cite any authority in support of their chosen interpretation—rather, the one case they cite, *Cooper*, acknowledges that choice of law provisions that relate only to the agreement "will not encompass tort claims," but goes on to analyze a provision that was "clearly meant to be read broadly." 575 F.3d at 1162.

## II.   THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM (COUNT III).

The District Court properly dismissed Plaintiffs' fiduciary duty claim against Robinhood Financial and Robinhood Securities because neither party owed a general fiduciary duty to Plaintiffs.

Plaintiffs are reduced to sweeping rhetoric in contending that this case is about "Big Tech." (Br. 2; *see also id.* 27-28.) They suggest that Robinhood advocated for, and the District Court reached, a result that "immunized" Robinhood from the duties that would apply to similar, non-tech-based stockbrokers. These contentions are invented from whole cloth. The District Court did not hold, and Robinhood has never argued, that online brokerages owe

---

and because the claims against non-signatories arose from the agreement); *Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678, 683-84 (Fla. 5th DCA 2006) (same).

different fiduciary duties from brokers who interact with customers in person or by telephone call. Rather, the issue in this case is whether customers may enter into agreements with brokers who (regardless of technology) limit their role to executing orders they accept from customers.[10] The law of both California and Florida is clear that they can.

Here, as Plaintiffs expressly acknowledged in the Agreement, neither Robinhood Financial nor Robinhood Securities owed Plaintiffs a general fiduciary duty because they are *nondiscretionary* brokers that did *not* provide investment advice. Because the conduct at issue has nothing to do with trades that Robinhood actually accepted for execution, Plaintiffs' fiduciary duty claims fail under Florida and California law.

A.    <u>Robinhood Does Not Owe Customers a General Fiduciary Duty.</u>

The District Court correctly held that stockbrokers "do not owe general fiduciary duties to clients with non-discretionary accounts unless they also provide those clients with investment advice." (Op. 40.) No such investment advice was provided here.

---

[10] Ironically, it is Plaintiffs who assert the existence of a special fiduciary duty to keep trading open by virtue of Robinhood's online, mobile platform. In any event, Plaintiffs' citations to cases about "new technology" (Br. 28) are irrelevant. Neither case involved stockbrokers or fiduciary duty claims.

Under California law, general fiduciary duties "do not arise" where the relationship between broker and customer is "confined to the simple performance of transactions ordered by a customer." *Petersen v. Sec. Settlement Corp.*, 277 Cal. Rptr. 468, 473 (Ct. App. 1991). Only brokers acting in a discretionary capacity by managing their customers' accounts or providing investment advice owe a general fiduciary duty. *Compare Duffy v. Cavalier*, 264 Cal. Rptr. 740, 754 (Ct. App. 1989) (finding fiduciary duties applied where broker solicited speculative transactions), *with Apollo Cap. Fund LLC v. Roth Cap. Partners LLC*, 70 Cal. Rptr. 3d 199, 214 (Ct. App. 2007) (finding no fiduciary duty where the stockbroker was not an "adviser to the customer about investment decisions").

Likewise, under Florida law, a broker for a nondiscretionary account "has *no continuing management duty* over the account once the single transaction is complete." *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 n.9 (11th Cir. 1987) (emphasis added) (citing *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952-53 (E.D. Mich. 1978), *aff'd*, 647 F.2d 165 (6th Cir. 1981)). *Leib*, which this Court relied upon in articulating Florida law, emphasizes that "[i]n a non-discretionary account each transaction is viewed

19

singly" and "duties to the customer cease when the transaction is closed." 461 F. Supp. at 952-53.[11]

The District Court also correctly held that "Florida law, like California law, permits introducing brokers to limit the scope of their duties to customers by agreement." (Op. 45.) In *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, this Court held under Florida law that "[w]hether [a broker] had a fiduciary duty to [its customer] is determined by the substantive agreement of the parties." 600 F.3d 1334, 1339 (11th Cir. 2010); *see also Misabec Mercantile, Inc. v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 839 (11th Cir. 1988) (conclusion that broker "carried out its preexisting, agreed upon tasks properly" "forecloses the breach of fiduciary duty claim"); *SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A.*, 584 So. 2d 1051, 1054 (Fla. 2d DCA 1991) (defining scope of fiduciary duties by agreement). Similarly, under California law, "a stockbroker is an agent of his client," *Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 769 F.2d 561, 567 (9th Cir. 1985), and fiduciary duties are "limited to the scope of the agency set forth in the agreement," *Meyers v.*

---

[11] This is in accord with the law in other states as well. *See, e.g., Indep. Order of Foresters v. Donaldson, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) ("Under New York law, as generally, there is no general fiduciary duty inherent in an ordinary broker/customer relationship."); *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998) (same result under Texas law).

*Guar. Sav. & Loan Ass'n*, 144 Cal. Rptr. 616, 620 (Ct. App. 1978); *see also Carleton v. Tortosa*, 17 Cal. Rptr. 2d 734, 740 (Ct. App. 1993).

Here, before opening their Robinhood accounts, Plaintiffs were required to review and accept the terms of the Agreement.  (Compl. ¶¶29-81.)  In doing so, they agreed that "My Account is self-directed, and so that I am solely responsible for any and all orders placed in My Account and that all orders entered by Me or on My behalf are unsolicited and based on My own investment decisions."  (Agmt. §5.A.)  Plaintiffs further agreed that Robinhood does not make discretionary trades, would not provide investment advice, and would not recommend transactions:

> [N]either Robinhood nor any of its employees, agents, principals, or representatives: (1) provide investment advice in connection with this Account; (2) recommend any security, transaction or order; (3) solicit orders; (4) act as a market maker in any security; (5) make discretionary trades; and (6) produce or provide first-party research providing [] specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets.

(*Id.*)  Therefore, as Plaintiffs concede, "[n]ot every broker is an investment advisor, and thus brokers may limit their duties to exclude such services."  (Br. 29.)  That is precisely what happened here.

21

Plaintiffs also agreed that Robinhood could restrict their access to trading securities and could refuse to accept transactions:

- "Robinhood may at any time, in its sole discretion, and without prior notice to [the customer], prohibit or restrict [the customer's] ability to trade securities." (Agmt. §5.F); and

- "Robinhood may at any time, at its sole discretion and without prior notice to [the customer]: (i) prohibit or restrict [the customer's] access to the use of the App or the Website or related services and [customer's] ability to trade, (ii) refuse to accept any of [the customer's] transactions, (iii) refuse to execute any of [the customer's] transactions, or (iv) terminate [the customer's] Account." (*Id.* §16.)

Under these express contract terms, Robinhood was a nondiscretionary broker that had no duty to keep its trading platform open at all times for all orders.

None of the authorities that Plaintiffs cite supports the imposition of a general fiduciary duty on nondiscretionary brokers or in contravention of an agreement limiting the broker's duties to its customers. Plaintiffs' primary argument is that "the controlling Florida case," *Ward v. Atlantic Security Bank*, imposes a "fiduciary duty of loyalty and care." (Br. 27 (quoting *Ward*, 777 So. 2d 1144, 1147 (Fla. 3d DCA 2001)).) *Ward* does not support Plaintiffs' contention that a nondiscretionary broker such as Robinhood owes a generalized fiduciary duty. Instead, *Ward* simply follows the guidance of *Gochnauer* and *Leib*, neither of which imposes general fiduciary duties on nondiscretionary brokers that do not provide investment advice. 777 So. 2d at 1157. Specifically, *Ward* involved investment advice. *Id.* There, a broker "contacted Stockholder on its own

initiative and allegedly advised Stockholder not to sell his shares," which the court distinguished from prior occasions, on which the defendant had acted as a "non-discretionary" broker and the customer had made his "own investment decisions." *Id.* "Under [the] particular facts and circumstances" relating to the transaction where the broker solicited the customer and gave investment advice, the District Court of Appeal held that the broker owed general fiduciary duties. *Id.* No such facts or circumstances exist here.

Similarly, in *Gochnauer*, the broker provided investment advice to the plaintiffs and persuaded them to switch from municipal bonds to stock options. 810 F.2d at 1044. This Court affirmed the district court's ruling that, in that context, the broker owed a fiduciary duty to recommend prudent investments. *Id.* at 1050. And Plaintiffs' citation to *First Union Brokerage v. Milos* is also inapt because the broker "agreed to provide information on a daily basis with respect to those elements of the account which would impact upon decision-making"—in other words, investment advice. 717 F. Supp. 1519, 1521 (S.D. Fla. 1989). Again, no investment advice was provided here.

Plaintiffs also misread California cases—*Brown v. California Pension Administrators & Consultants, Inc.*, 52 Cal. Rptr. 2d 788 (Ct. App. 1996), and *Petersen*—in their effort to impose a broad fiduciary duty on nondiscretionary brokers. (Br. 30.) *Brown* recognizes that the relationship of a nondiscretionary

23

broker is "confined to [the] performance of transactions selected by their customers" and it "was not an expansive fiduciary relationship."  52 Cal. Rptr. 2d at 797.  The same is true of *Petersen*, where the court disclaimed general fiduciary duties where the brokerage relationship was "confined to the simple performance of transactions ordered by a customer."  277 Cal. Rptr. at 473.  Therefore, none of these cases undermines the fact that Robinhood—as a nondiscretionary broker that acted within the scope of its agency—did not owe (or breach) any fiduciary duties to Plaintiffs.

Finally, Plaintiffs cite the District Court's motion-to-dismiss order in a separate matter, *Pinchasov v. Robinhood Financial, LLC*, where the court ruled that the plaintiff had adequately pleaded that Robinhood Financial owed a fiduciary duty to the plaintiff.  (Br. 27); *see* 2021 WL 4991144, at *4 (S.D. Fla. Apr. 22, 2021).  But the *Pinchasov* complaint omitted that Robinhood Financial was a nondiscretionary broker, and did not incorporate by reference the Agreement by which customers agree to the limited scope of Robinhood's duties.  *See* 2021 WL 4991144, at *2-3 (applying Florida law and declining to consider the Agreement).  Subsequently, when the District Court could consider the Agreement on the motion for class certification, the court denied certification on the ground that California law applied and the *Pinchasov* plaintiff had failed to establish California law of fiduciary duty.  *See* 2021 WL 4991238, at *2 (S.D. Fla. Sept. 10,

2021).  Here, by contrast, based on the allegations in the Complaint and the incorporated Agreement, the District Court held correctly that, as nondiscretionary brokers, Robinhood Financial and Robinhood Securities did not owe general fiduciary duties to Plaintiffs.

In sum, Plaintiffs tellingly rely on cases from the 1800s, when stockbrokers all provided customers with accompanying investment advice.  (*See* Br. 23-24.)  Since the SEC and Congress in 1975 required exchanges to permit brokers to set their own commissions,[12] customers have benefited from the ability to choose brokers who offer lower commissions with the trade-execution services many customers want, without the cost of research analysis and investment advice. Thus, Plaintiffs' claim that "[t]he common law has long recognized the fiduciary nature of the stockbroker-client relationship" (Br. 23) is based on authorities that impose general fiduciary duties *only* on brokers who manage a *discretionary* account (*i.e.*, make investments on their customers' behalf) or provide investment advice.  In contrast, brokers like Robinhood who simply execute a customer's self-directed trade order owe limited agency-law duties, which can be defined by contract.

---

[12] *See* SEC Rule 19b-3, 17 C.F.R. §240.19b-3 (1975), adopted by SEC Release No. 34-11203, 40 Fed. Reg. 7394 (Feb. 20, 1975) (rescinded 1988); 15 U.S.C. §78f(e), enacted by Pub. L. No. 94-29, §4(e), 89 Stat. 97, 107-09 (June 4, 1975).

The District Court did not hold that "Robinhood has *no* fiduciary duties to its clients." (Br. 27 (emphasis in original).) Rather, the District Court held that Robinhood owed "limited" duties, "related to carrying out customer orders," but did not owe general fiduciary duties, including a duty to keep its trading platform open. (Op. 41.) This is the correct outcome under both Florida and California law on brokers' duties and pursuant to the terms of the Agreement.

B.    There Are No Other Reasons to Impose Generalized Fiduciary Duties on Robinhood.

Plaintiffs advance three arguments for why the District Court should have imposed a fiduciary duty despite clear Florida and California law to the contrary. Plaintiffs' arguments fail.

*First*, Plaintiffs contend erroneously that the District Court "truncated" its analysis by focusing only on whether Robinhood must "provide an open trading platform free of self-imposed trading restrictions." (Br. 30-31 (quoting Op. 39).) But none of the other alleged fiduciary duties—each of which arises from case discussions about the duties of *discretionary brokers*—applies on the facts of this case. (*Id.* at 31 (citing Compl. ¶304).) Robinhood's "duty to carry out orders promptly in a manner best suited to serve the customer's interests" (*id.*) is limited to customer orders that Robinhood accepts, and Plaintiffs do not allege that Robinhood failed to carry out such orders properly. *See Meyers*, 144 Cal.

Rptr. at 620; *Misabec*, 853 F.2d at 839; (Agmt. §§5.F, 16).[13]  Robinhood also had

no "duty to use reasonable efforts to provide customers with information relevant

to the affairs entrusted to it" (Br. 31 (citing Compl. ¶304)), as Plaintiffs concede

that Robinhood had no discretionary management authority and did not provide

investment advice.  (*See* Agmt. §5.A); *see also Apollo Cap. Fund*, 70 Cal. Rptr. 3d

at 214; *Ward*, 777 So. 2d at 1157.  And, whatever duty Robinhood would owe not

to preference its own self-interest in executing a trade it already accepted, that duty

concerning accepted trades did not and cannot override its contractually retained

authority not to accept a trade.  *See Meyers*, 144 Cal. Rptr. at 620; *Misabec*, 853

F.2d at 839; (Agmt. §16).

        As a result, what Plaintiffs actually demand from this Court is to

impose on Robinhood (and all other nondiscretionary brokers) an ongoing

fiduciary duty to its customers in making all of its business decisions, without any

connection to the execution of any specific transactions directed by those

customers.  (Br. 23-26.)  As set forth in the preceding section, this is not the law:

"[i]n a non-discretionary account, each transaction is viewed singly" and any

---

[13] Plaintiffs refer obliquely to Plaintiff Moody's canceled trade orders.  (Br. 26.)  But as explained above, Robinhood Financial and Robinhood Securities, as limited agents, acted within the scope of the Agreement when they canceled—*i.e.*, declined to execute—any pending trade orders, and thus violated no duties.  *See Meyers*, 144 Cal. Rptr. at 620; *Misabec*, 853 F.2d at 839; (Agmt. §16).

"duties to the customer cease when the transaction is closed." *Leib*, 461 F. Supp. at 952-53; *see also Gochnauer*, 810 F.2d at 1049 n.9.

*Second*, Plaintiffs nonsensically contend that Robinhood Financial and Robinhood Securities had a duty to "keep trading open." (Br. 31-33.) If such a requirement existed (it does not), it would require brokers to maintain limitless capital to support limitless trades no matter the risk to the broker or the financial system. And as just discussed, Robinhood had no ongoing duties after it executed a particular transaction. Robinhood therefore acted within the scope of its agency with its customers and violated no duties to Plaintiffs. *See Misabec*, 853 F.2d at 839 (that broker "carried out its preexisting, agreed upon tasks properly" "forecloses [a] breach of fiduciary duty claim"); *SFM*, 600 F.3d at 1339-40.

Plaintiffs' arguments to the contrary are unavailing. Plaintiffs argue that the Agreement must be "read as a whole" and point to language in which Robinhood Financial and Robinhood Securities agreed to take "'such . . . steps as are reasonable to carry out [the client's] directions." (Br. 31-32 (quoting Agmt. §4).) But reserving the contractual right to decline customer orders does not contradict an agreement to take "reasonable steps" to comply with customers' directions upon accepting and agreeing to execute that order. Equally unavailing is Plaintiffs' argument that because the Agreement provided that all transactions are subject to the "applicable laws and regulations of any state or jurisdiction in which

28

Robinhood Financial is registered" (Agmt. §11), Robinhood is prohibited from declining trade orders because doing so would violate certain state laws and FINRA rules concerning "clients' best interest" (Br. 32).  Section 11 of the Agreement is a choice-of-law provision and a provision authorizing customers to bring FINRA arbitrations, not a substantive restriction on Robinhood's rights under other provisions of the Agreement.  Moreover, Plaintiffs fail to identify any state law or FINRA rule (*id.*); further, their argument has been rejected by the SEC, which recognized that brokers may, in their customer agreements, reserve the discretion not to accept customer trade orders.  (*See* SEC Statement.)

Plaintiffs also advance a semantic red herring that there is somehow a contradiction between Robinhood's "sole discretion" to restrict trading (Agmt. §5.F) and the fact that Robinhood is a nondiscretionary broker.  Plaintiffs wrongly conflate Robinhood's explicit contractual authority to choose whether to *accept* customer orders with a discretionary broker's authority to manage an account and make trades on a customer's behalf.  This Court has recognized that a "discretionary account is when the broker has a continuous obligation to manage the account."  *Gochnauer*, 810 F.2d at 1049 n.9.  This is a wholly separate concept from whether a broker has the choice to decline a customer order; Plaintiffs' argument is simply wordplay with the term "discretion."

*Third*, Plaintiffs argue that the alleged inexperience of Robinhood's customers can itself create a fiduciary duty.  (Br. 33.)  But as the District Court properly found (Op. 42-44, 46), Plaintiffs cannot plead that Robinhood had a "special" or "confidential" relationship with each one of its millions of customers.  To establish a confidential relationship, Florida law requires "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989).  "[T]he fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party."  *Id.*  Here, Robinhood disclaimed responsibility in the Agreement (Agmt. §5.A), and Florida courts recognize that such disclaimers bar a finding of a fiduciary duty.  *See Kipnis v. Bayerische Hypo-und Vereinsbank, AG*, 2017 WL 11103938, at *11 (S.D. Fla. June 26, 2017); *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at *5 (M.D. Fla. Feb. 22, 2017).

Likewise, under California law, a "special" or "confidential" relationship cannot exist unless the fiduciary "voluntarily accepts or assumes to accept the confidence."  *Barbara A. v. John G.*, 193 Cal. Rptr. 422, 431 (Ct. App. 1983).  Accordingly, California courts have held that marketing statements to the public, such as the ones on which Plaintiffs rely, do not create a confidential

30

relationship with all of a company's customers. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 676 (Cal. 1983); *see also Siemonsma v. Mut. Diversified Emps. Fed. Credit Union*, 2011 WL 1485979, at *3 (C.D. Cal. Apr. 19, 2011) ("To find a confidential relationship arising out of the mere depositing of funds would make confidential relationships ubiquitous in the lending industry, which strikes the Court as contrary to the meaning of a confidential relationship.").

In light of the foregoing, the District Court properly held that Plaintiffs fail to plead that Robinhood owed them general fiduciary duties.

C.  <u>Robinhood Securities, as a Clearing Broker, Does Not Owe Fiduciary Duties.</u>

The District Court also properly dismissed the claims against Robinhood Securities for the additional reason that a clearing broker does not owe a fiduciary duty to its introducing broker's customers as a matter of law.  (*See* Op. 46-48.)

Plaintiffs cite *SFM Holdings* for the unremarkable proposition that clearing brokers "*do* have the 'duty of executing stock orders,' and that the clearing broker there 'performed to the extent of the agency created' in the agreement."  (Br. 34 (citing *SFM*, 600 F.3d at 1340).)  But they ignore the rest of the case, which explains that a clearing broker owes a duty only to the introducing broker (here, Robinhood Financial), not the customer engaged in a trade.  *SFM*,

31

600 F.3d at 1338-39 ("clearing brokers ordinarily owe no fiduciary duty to the customers of introducing brokers"). California law is in accord. *See Mars v. Wedbush Morgan Sec., Inc.*, 283 Cal. Rptr. 238, 242 (Ct. App. 1991) (holding that clearing broker "generally owes no fiduciary duty" to introducing broker's customer); *Petersen*, 277 Cal. Rptr. at 473 ("it would be unfair to impose upon [a clearing broker] disclosure duties which can only be performed by a broker with direct access to customers").

\*       \*       \*

For the reasons set forth above, Plaintiffs fail to plead that any Defendant owed Plaintiffs fiduciary duties arising from Robinhood's PCO of the Suspended Stocks. This Court should affirm the District Court's dismissal of Plaintiffs' fiduciary duty claim (Count III).

## III. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' NEGLIGENCE CLAIMS (COUNTS I AND II).

The District Court properly concluded that Robinhood owed no duty of care to Plaintiffs because they have alleged only economic losses arising from Robinhood's exercise of an express contractual right. A negligence claim cannot be sustained unless the defendant owes the plaintiff a duty of care. *See Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 533 (Fla. 2d DCA 1999); *Bily v. Arthur Young & Co.*, 834 P.2d 745, 760-61 (Cal. 1992). This Court should decline

Plaintiffs' invitation to "rewrite the Agreement under the guise of novel negligence claims" (Op. 39) and affirm the dismissal of Plaintiffs' negligence claims.

A. <u>Robinhood Owes Its Customers Contractual Obligations, Not a Generalized Tort Duty of Care.</u>

The Court below correctly concluded that Counts I and II must be dismissed because Plaintiffs had "not adequately allege[d] the existence of a tort duty under either California or Florida law" (Op. 39) because the duties that Robinhood owed to Plaintiffs were set forth in the Agreement, and there is no generalized negligence duty to avoid economic losses.

*First*, as the District Court observed, "[i]f two parties have a contract, the argument for limiting tort claims between them is at its most powerful." (Op. 38 (quoting Restatement (Third) of Torts:  Liab. for Econ. Harm §3, cmt. a (2020)).)  Indeed, under California law, tort claims for monetary losses "are barred when they arise from—or are not independent of—the parties' underlying contracts." *Sheen v. Wells Fargo Bank, N.A.*, 505 P.3d 625, 633 (Cal. 2022) (citations omitted).  That is because "[i]f every negligent breach of contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies." *Erlich v. Menezes*, 981 P.2d 978, 984 (Cal. 1999)  Florida law similarly recognizes that "purely economic risks are normally left to private bargaining, and thus, more appropriately addressed by contractual principles rather than expanding the 'social contract' created by

negligence law to include a duty of care to protect against losses unconnected to bodily injury or property damage." *Underwriters at Int. v. All Logistics Grp., Inc.*, 483 F. Supp. 3d 1199, 1211 (S.D. Fla. 2020). Here, Plaintiffs' negligence claims plainly arise from the Agreement and therefore cannot proceed under either California or Florida law.

*Second*, it is black-letter law that "[a]n actor has no duty to avoid the unintentional infliction of *economic loss* on another." Restatement (Third) of Torts: Liab. for Econ. Harm §1(1) (2020) (emphasis added). This is also true regardless of whether Florida or California law applies. Here, Plaintiffs assert only economic losses and thus cannot allege that Robinhood owed them a duty of care.

To begin, the California Supreme Court confirmed again this year that "there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen*, 505 P.3d at 632 (citations omitted); *see also S. Cal. Gas Leak Cases*, 441 P.3d 881, 886 (Cal. 2019) ("liability in negligence for purely economic losses . . . is the exception, not the rule"). California "requir[es] more than mere foreseeability for imposing a duty of care" in cases involving economic losses because courts "appreciate[] the need to safeguard the efficacy of tort law by setting meaningful limits on liability." *S. Cal. Gas Leak Cases*, 441 P.3d at 887; *see id.* at 889 (dismissing plaintiffs' negligence claim because "consensus cuts sharply against

imposing a duty of care to avoid causing purely economic losses in negligence cases").

Florida law is in accord.  As the Florida District Court of Appeal explained in *Monroe*:

> Negligence law evolved from the intentional tort of trespass on the case.  Because trespass on the case tended to protect a plaintiff only for property damage or injury to person, that is the nature of the protection carried over to negligence law.  Thus, the general standards of care traditionally created by negligence law are standards designed to protect person and property from physical injury.

*Monroe*, 746 So. 2d at 534 (citations omitted).  Florida law thus holds that "no duty exists within the law of negligence requiring [that a defendant] protect [a plaintiff] from purely economic losses."  *Id.* at 531; *see also Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003) (defendant owes general duty in negligence only for "physical harm"); *Underwriters*, 483 F. Supp. 3d at 1211 ("[P]laintiffs are generally not permitted to recover for purely economic losses when the plaintiff has sustained no bodily injury o[r] property damage.") (internal quotations and alteration omitted).  This Court has even specifically recognized under Florida law that where, as here, a financial institution has stated in a contract that it has "no discretionary role in investing [plaintiff's] assets," the plaintiff cannot recover for economic harm on a negligence theory.  *See, e.g.*, *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 948 (11th Cir. 2014) (where custodial bank

customers held nondiscretionary accounts, bank owed no generalized negligence duties).  Therefore, Plaintiffs cannot plead that Robinhood owed them a negligence duty of care for their alleged economic losses.

Plaintiffs wrongly assert that the Florida Supreme Court's decision in *Tiara Condominium Association, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013), stands for the proposition that purely economic losses "are not a bar to tort liability under Florida law."  (Br. 42-43.)  As the District Court noted in rejecting the same argument, Plaintiffs conflate two distinct concepts:  the economic loss rule and the duty element of all negligence claims.  (Op. 35-36.) *Tiara* simply confined the economic loss rule—a defense to negligence claims for defective products—to product liability claims.  *See Tiara*, 110 So. 3d at 407. However, as the District Court explained, "*Tiara* did not address the duty element of negligence claims, and thus, it did not impose a general tort duty to avoid causing economic harm where none had existed before."[14]  (Op. 36-37.)  Indeed, as

_____

[14] Plaintiffs dispute the District Court's observation that *Tiara* did not address the duty element of a negligence claim.  (Br. 43.)  However, they take out of context the *Tiara* court's citation to the United States Supreme Court's decision in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) (which Plaintiffs erroneously attribute to *Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So. 2d 899 (Fla. 1987)), in which the Supreme Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."  *Tiara*, 110 So. 3d at 404 (quoting *East River*, 476 U.S. at 871).  The *Tiara* court's use of the word "duty" in discussing the origins of the economic loss rule does not mean that the holding of the case concerned the duty element of negligence claims.  The District Court correctly held that the *Tiara* court did no such thing.

the concurrence in *Tiara* made clear, "[b]asic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and . . . our clarification of the economic loss rule's applicability does nothing to alter these common law concepts." *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring).

This is why, following *Tiara*, Florida courts have "continued to recognize that the duty requirement precludes most negligence claims predicated on economic harm alone." (Op. 36.) *See, e.g.*, *Hawrych v. Nutra-Luxe M.D., LLC*, 2022 WL 1187136, at *5 (M.D. Fla. Apr. 21, 2022) ("[T]he [*Tiara*] Court's holding did not depart from common law principles that restrict tort remedies for parties to a contract."); *Medmoun v. Home Depot U.S.A., Inc.*, 2022 WL 1443919, at *8 & n.2 (M.D. Fla. May 7, 2022) (clarifying that post-*Tiara*, "a plaintiff may [generally] not recover in tort for a contract dispute"). Plaintiffs ignore these decisions.

Plaintiffs' criticism of the District Court's reliance on *Tank Tech, Inc., v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383 (Fla. 2d DCA 2018), is also misplaced. (Br. 44.) Plaintiffs are correct that the *Tank Tech* decision did not address *Tiara*. But that is precisely because *Tiara* has nothing to do with *Tank Tech*; the court in *Tank Tech* was not considering the "economic loss doctrine," but rather whether the defendant had a legal *duty* to the plaintiff to avoid the alleged

harm. *Tank Tech*, 224 So. 3d at 392-94.  Plaintiffs also wrongly contend that *Tank Tech* held that where there is a "link between the parties," such as "contractual privity," economic harm can support a generalized duty of care.  (Br. 44.)  In fact, *Tank Tech* rejected the plaintiff's negligence claim on the ground that, although the parties were in contractual privity, "there [wa]s neither a special relationship . . . nor any extraordinary circumstance that would require imposition of a duty." *Tank Tech*, 224 So. 3d at 394; *see also id.* (emphasizing that defendant's conduct "did not cause any personal injury or property damage to [plaintiff], the types of injuries for which the common law of negligence has historically permitted recovery").

In short, Plaintiffs' hyperbolic assertions that the District Court's opinion allows Robinhood to escape any duties to its customers are misplaced.  Robinhood's point (and the District Court's holding) is simple and fully in accord with the governing law:  the obligations between Robinhood and its customers are set forth in the binding contract that Plaintiffs accepted.  No generalized tort duty to avoid economic losses exists.  Plaintiffs' arguments to the contrary are unavailing under both California and Florida law.

B.    <u>Plaintiffs Cannot Create a Tort Duty Under California Law.</u>

Plaintiffs' arguments that the Court may nonetheless impose a duty of care under California law are unavailing.  (Br. 45-47.)  As explained above, under California law, "liability in negligence for purely economic losses . . . is the

exception, not the rule," *S. Cal. Gas Leak Cases*, 441 P.3d at 886 (internal

quotations omitted), and there is no basis here to depart from the general rule.

      *First*, Plaintiffs argue that under California law, "a 'duty of care can

. . . be grounded in—and hence 'borrowed' from—the public policy embodied in a

legislatively enacted statute or ordinance,'" which, according to Plaintiffs, includes

FINRA rules.  (Br. 45 (quoting *Issakhani v. Shadow Glen Homeowners Ass'n, Inc.*,

278 Cal. Rptr. 3d 270, 279 (Ct. App. 2021) (citations omitted)).)  However,

Plaintiffs have waived the argument they now make on appeal as they *conceded* to

the District Court that this argument is wrong, explaining that "industry standards

and customs *do not give rise to an independent legal duty*," but rather "help define

the standard of care."  (MTD Opp. 26 (emphasis added)); *see Irving v. Mazda

Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998) ("We cannot allow Plaintiff to

argue a different case from the case she presented to the district court.").  As the

District Court stated, "Plaintiffs do not argue that any of their cited regulations is

*the source* of the tort duties they allege Defendants owe them" but instead that they

"explain Robinhood's standard of care. . . .  These contentions assume that a duty

of care in fact exists, and thus, they are irrelevant to whether Robinhood owed

Plaintiffs a tort duty."  (Op. 37-38 n.18 (alterations omitted).)

      In any event, Plaintiffs are wrong.  Plaintiffs identify no statutes or

regulations that impose a duty of care in cases involving purely economic loss.

*See, e.g.*, *Sheen*, 505 P.3d at 631 (explaining that California's general negligence statute, Civil Code §1714, does not impose a duty of care for purely economic losses).  Further, FINRA rules cannot give rise to a negligence duty of care (nor do Plaintiffs cite any authorities stating that they do).  That is because California law requires a legislative enactment to create a duty of care, and an administrative agency (let alone a self-regulatory organization, such as FINRA) "does not have the same capacity."  *Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Ass. Co.*, 73 Cal. Rptr. 2d 182, 188 (Ct. App. 1998); *see also Kenosha Unified S. Dist. v. Stifel Nicolaus & Co.*, 607 F. Supp. 2d 967, 979 (E.D. Wis. 2009) (holding FINRA rules are private rules "*not* enacted directly by Congress or the SEC").

Moreover, the District Court correctly found that the cited FINRA rules are irrelevant to whether Robinhood owed Plaintiffs a duty of care and, in addition, that Plaintiffs failed to plead how Robinhood violated them.  (Op. 37-38 n.18.)  Plaintiffs invoke FINRA Rule 3110 (Compl. ¶169; Br. 40), which provides generally that a broker must maintain a supervisory system to comply with securities laws and regulations.  Plaintiffs allege, however, that Robinhood had a supervisory and risk management system in place (*e.g.*, Compl. ¶¶192-194)— which resulted in the limited purchase restrictions—and cite no authorities suggesting Robinhood's system was inadequate under FINRA rules.  And Plaintiffs cite FINRA Rule 4370 (Compl. ¶169; Br. 40) because it refers to

"mission critical systems," but this rule merely requires a written "business continuity plan" for significant business disruptions (*e.g.*, meteorological or geological events, pandemic or a technology-related disruption).  FINRA R. 4370(a), (c).[15]  Thus, Plaintiffs cannot demonstrate that a duty of care arises from any FINRA rules, or how any such purported duty was breached.

For the first time on appeal, Plaintiffs vaguely reference Rule 5310, the "best execution" rule, but the Complaint does not allege whether or how Robinhood purportedly violated it.[16]  Moreover, FINRA Rule 5310 cannot be understood to impose a duty of care to accept all trade orders when FINRA acknowledged that "[m]ember firms are not obligated to receive or accept orders from customers . . . where firms determine they must change their order handling procedures to restrict the entry or acceptance of customer orders to limit the firm's exposure to extraordinary market risk."  FINRA, Regulatory Notice 21-12 (Mar. 18, 2021), https://www.finra.org/rules-guidance/notices/21-12; *see also Issakhani*,

---

[15] *See also* FINRA, "Business Continuity Planning FAQ," https://www.finra.org/rules-guidance/key-topics/business-continuity-planning/faq (last visited Aug. 28, 2022); Robinhood Financial and Robinhood Securities Business Continuity Plan Summary, https://cdn.robinhood.com/assets/robinhood/legal/RHF%20and%20RHS%20Business%20Continuity%20Plan%20Summary.pdf (last visited Aug. 28, 2022).

[16] Perhaps Plaintiffs previously declined to allege Robinhood violated Rule 5310 because pleading violations of the "best execution" rule would preclude their state-law claims under the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. §78bb(f)(1).  *See Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1156 (9th Cir. 2017).

278 Cal. Rptr. 3d at 281 (requiring "the harm the plaintiff suffered was one the statute . . . was designed to prevent" (internal quotations omitted)).

*Second*, Plaintiffs argue that the undertaker doctrine imposes a duty of care on Robinhood.  (Br. 46.)  The undertaker doctrine is irrelevant here.  Under California law, the doctrine applies only where physical harm or property damage is alleged.  *See Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1175 n.28 (Cal. 2005) (applying Restatement (Second) of Torts §§323, 324A, which explains that one who "render[s] services to another for which he should recognize as necessary" for the protection of another's person or things "is subject to liability to the other *for physical harm* resulting from his failure to exercise reasonable care" (emphasis added)).  The sole authority Plaintiffs cite confirms this limitation.  *See Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. Rptr. 3d 680, 686, 692-93 (Ct. App. 2019) (plaintiff was physically injured at a fraternity party).

*Third*, Plaintiffs argue that there is a "general rule" imposing a "duty of care to avoid causing harm" under California law.  (Br. 46 (citing *S. Cal. Gas Leak Cases*, 441 P.3d at 885).)  The first problem with this argument, as stated above, is that this generalized duty applies only to cases involving physical harm and property damage, not economic losses, as Plaintiffs' own cited case holds.  *See S. Cal. Gas Leak*, 441 P.3d at 889.

The second problem is that Plaintiffs' invocation of the "multiple factors" that California courts look to in determining whether a tort duty exists (Br. 46) is a thinly-veiled attempt to seek refuge in California's "special relationship" exception. *See Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. 1959); *J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (Cal. 1979). However, that exception does not apply here because, as the California Supreme Court's recent decision in *Sheen* clarified, "the *Biakanja* factors are not applicable when, as here, the litigants are in contractual privity and the plaintiff's claim is not independent of the contract arising from principles of tort law." *Sheen*, 505 P.3d at 646 (internal quotations and citations omitted). Plaintiffs have also waived the argument, since they make no meaningful effort in their Initial Brief to explain why the District Court erred in rejecting the imposition of a duty based on the *Biakanja* factors. (Op. 23-34); *see Ingmire*, 520 Fed. Appx. at 833 ("A party abandons all issues on appeal not plainly and prominently raised in the initial brief.").

*Fourth*, Plaintiffs cannot invoke the independent tort or "professional services" doctrines, which are narrow exceptions to the general rule that parties in contractual privity do not owe one another tort duties. *See Sheen*, 505 P.3d at 633, 637. As an initial matter, Plaintiffs waived the right to invoke either exception as Robinhood explained in its Motion below why neither of these exceptions apply and Plaintiffs failed to respond. (*See* MTD 15-16; MTD Reply 13); *FDIC v. Verex*

*Assurance, Inc*. 3 F.3d 391, 395 (11th Cir. 1993) ("By well settled convention, appellate courts generally will not consider an issue or theory that was not raised in the District Court.").

In any event, the "independent tort doctrine" applies only where the plaintiff alleges a tort that is "independent of the [contractual] breach." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 360 (Cal. 2004). California courts have also limited this exception to intentional torts, such as fraud. *See Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, 2015 WL 13309286, at *11 (C.D. Cal. Jun. 22, 2015) ("Unintentional acts and misrepresentations are clearly not the type that the California Supreme Court had in mind as forming the basis of an independent tort duty . . . ."); *Erlich*, 981 P.2d at 984 (same). Plaintiffs do not allege an intentional tort in the Complaint, and their one-sentence assertion that Robinhood acted "intentionally" (Br. 49) is insufficient to sustain this exception.

The professional duty exception is also inapplicable because Robinhood did not perform "professional services" for Plaintiffs. *See N. Counties Eng'g, Inc. v. State Farm Gen. Ins. Co.*, 169 Cal. Rptr. 3d 726, 749 (Ct. App. 2014). Under California law, "professional services" are those requiring "specialized knowledge, labor, or skill, and [where] the labor or skill involved is predominantly mental or intellectual." *Id.* (citation omitted); *see also* Restatement (Third) of Torts: Liab. for Econ. Harm §4 cmt. b (services within the "professional

services" exception often entail providing "complex discretionary judgments"). Professional services are typically performed "for remuneration." *Hollingsworth v. Com. Union Ins. Co.*, 256 Cal. Rptr. 357, 360 (Ct. App. 1989).

As discussed above, Robinhood offers its customers *nondiscretionary* brokerage services, which, as relevant to this case, are limited to the execution of trade orders that Robinhood accepts from customers pursuant to the terms of the Agreement. (*See* Agmt. §5.A.)  Robinhood does not "provide investment advice," "recommend any security" or "make discretionary trades" (*id.*)—the type of actions requiring "complex discretionary judgments" to which professional duties might apply. *See* Restatement (Third) of Torts: Liab. for Econ. Harm §4 cmt. b. Robinhood, therefore, is unlike the two defendant *discretionary* brokers in the cases cited by Plaintiffs, *Moreno v. Sanchez*, 131 Cal. Rptr. 2d 684, 689-90 (Ct. App. 2003), and *Twomey v. Mitchum, Jones & Templeton, Inc.*, 69 Cal. Rptr. 222, 246 (Ct. App. 1968).  Finally, as a commission-free nondiscretionary broker, Robinhood does not provide its trading services for remuneration.

C.    <u>Plaintiffs Cannot Create a Tort Duty Under Florida Law.</u>

Plaintiffs' arguments under Florida law fail as well.  There is no generalized duty to avoid economic losses.  Accordingly, Florida law "permits courts to entertain negligence claims for economic harm 'only when specific circumstances have warranted a more liberal judicial rule and an expanded duty of

care.'"  (Op. 37 (quoting *Lucarelli Pizza & Deli v. Posen Constr., Inc.*, 17 So. 3d 1092, 1094-95 (Fla. 2d DCA 2015).)  No such circumstances are present here.

*First*, Plaintiffs again cite the "undertaker rule."  (Br. 37 (citing *Clay Electric*, 873 So. 2d at 1186).)  But, as with California law, Plaintiffs wholly ignore that the "undertaker doctrine" under Florida law is limited to claims involving physical harm or property damage.  *See Wallace v. Dean*, 3 So. 3d 1035, 1040, 1050 (Fla. 2009).  Each case cited by Plaintiffs involved one of these two types of harm.  *See, e.g.*, *Clay Electric*, 873 So. 2d at 1184 (pedestrian struck and killed by truck near inoperative streetlight); *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992) (plaintiff injured by mechanical blade); *Muchnick v. Goihman*, 245 So. 3d 978, 981-82 (Fla. 3d DCA 2018) (damage to apartment caused by failure to remediate mold and water leaks).[17]  The undertaker doctrine does not impose a duty where, as here, Plaintiffs allege only economic harm.[18]  (Op. 34.)

---

[17] Plaintiffs' reliance on *Mednax Services, Inc. Customer Data Security Breach Litigation*, 2022 WL 1468057, at *1 (S.D. Fla. May 10, 2022), a data security case, is misplaced.  That case is consistent with the requirement of bodily injury or property damage for negligence liability because Florida courts have recognized a property right in data.  *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *13 (M.D. Fla. Jan. 27, 2020).

[18] Plaintiffs again point to the District Court's decision in *Pinchasov*.  However, the parties in *Pinchasov* did not raise—and the District Court therefore did not consider—that a general duty of care in negligence under Florida law arises only to claims of physical harm.  *See Pinchasov*, 2021 WL 4991144, at *3-4.

*Second*, Plaintiffs are again wrong in contending that various "statutes and regulations," such as FINRA Rules 3110, 4370 and 5310, establish a duty of care under Florida law.[19]  (Br. 39-40.)  As discussed above, Plaintiffs waived this argument by conceding below that FINRA rules merely "help define the standard of care" rather than create a duty of care (MTD Opp. 26).  *See Irving*, 136 F.3d at 769; *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

In any event, Florida law is clear that rules and regulations cannot give rise to a duty of care; they can only inform the *standard* of care where a *duty* otherwise exists as a matter of law.  *See, e.g.*, *Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1182 (Fla. 2d DCA 2008) ("[T]he violation of a statute may be evidence of negligence, but such evidence only becomes relevant to a breach of a standard of care after the law has imposed a duty of care."); *see also Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020) (dismissing negligence claim, premised on SEC regulation and FINRA Rule, because the "[p]laintiff cannot circumvent the lack of a private right of action for violations of industry rules merely by recasting her claim as a violation of a common law duty"); *Kidder Peabody & Co. v.*

---

[19] Plaintiffs also refer vaguely to NSCC and DTCC rules.  (Br. 40 (citing Compl. ¶¶152-165).)  But, as with FINRA rules, Plaintiffs do not have a private right of action for purported violations of DTCC or NSCC rules, which are simply contractual agreements between the DTCC and NSCC and their members.

*Unigestion Int'l, Ltd.,* 903 F. Supp. 479, 494-95 (S.D.N.Y. 1995) (same).[20]

Plaintiffs also fail to explain how Robinhood deviated from any industry standards even if they were relevant to this case.  (Op. 38 n.18.)

*Third*, Plaintiffs contend that the "facts of the case impose a legal duty" because they show "a foreseeable zone of risk arising from" Robinhood's alleged conduct.  (Br. 41-42 (quoting *McCain*, 593 So. 2d at 503).)  Again, a tort duty arises from foreseeability of harm *only* when an actor's conduct creates a risk of *physical* harm.  *See Clay Electric*, 873 So. 2d at 1186; *Monroe*, 746 So. 2d at 435.  Plaintiffs have not cited a single case in which a court found a defendant's conduct created a foreseeable zone of risk in the absence of physical injury or property damage.  Instead, Plaintiffs' sole case is *McCain*, in which the court concluded that a "foreseeable zone of risk" arose from a power company's failure to identify safe areas around underground electric lines, leading to physical injury to a construction worker.  *McCain*, 593 So. 2d at 504.  Indeed, the cases cited elsewhere in Plaintiffs' brief that discuss foreseeable zone of risk similarly involve physical harm.  *See, e.g.*, *Wallace*, 3 So. 3d at 1050 (sheriff's deputies' failure to call ambulance led to individual's death); *Clay Electric*, 873 So. 2d at 1186 (failure to maintain street light led to pedestrian being struck by truck).

---

[20] The three cases cited by Plaintiffs (Br. 40-41) similarly look to regulatory requirements only to inform the standard of care, not to determine whether a duty exists in the first place.

\*    \*    \*

In sum, Plaintiffs fail to plead any exception to the general rule that "no duty exists within the law of negligence requiring [that a defendant] protect [a plaintiff] from purely economic losses." *Monroe*, 746 So. 2d at 531; *see also S. Cal. Gas Leak Cases*, 441 P.3d at 886. This Court should therefore affirm the District Court's dismissal of Plaintiffs' negligence claims (Counts I and II).

## IV. ROBINHOOD DID NOT BREACH ANY IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT V).

Plaintiffs cannot use the implied covenant of good faith and fair dealing to override the express contract terms that permitted Robinhood to take the very actions that Plaintiffs now challenge. The Court should sustain the District Court's dismissal of this claim.

The implied covenant of good faith and fair dealing "cannot substantively *alter* [a contract's] terms," *Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110 (Cal. 2000), and "cannot prohibit a contracting party from doing that which is expressly permitted by the agreement itself," *Brehm v. 21st Century Ins. Co.*, 83 Cal. Rptr. 3d 410, 422 (Ct. App. 2018).[21] Here, the Agreement expressly granted Robinhood the discretion to refuse to accept customer orders for any reason at any time. (Agmt. §§5.F, 16.) The District Court therefore properly dismissed

---

[21] The parties agree that California law applies to this claim. (Br. 21 n.4.)

49

Plaintiffs' claim because "California law precludes Plaintiffs from using the implied covenant to override Section 5.F's express grant of discretion." (Op. 53-56.) Neither of Plaintiffs' arguments supports reversal.

*First*, Plaintiffs appear to make a contract argument, claiming that Robinhood only had discretion over *when and how* to accept a trade rather than *whether* to accept the trade. This argument finds no footing in the contract or the law. Section 5.F of the Agreement (among other provisions) gives Robinhood the express right in its "sole discretion" to "prohibit or restrict [the customer's] ability to trade securities." (Agmt. §5.F (Robinhood may in its "*sole discretion*, and without prior notice to [the customer] prohibit or restrict [the customer's] ability to trade securities"); *see also id.* §16 ("Robinhood may . . . refuse to accept any of [the customer's] transactions" and "refuse to execute any of [the customer's] transactions.").) *See Stonebrae, L.P. v. Toll Bros., Inc.*, 2010 WL 1460208, at *4 (N.D. Cal. Apr. 8, 2010) (observing agreements grant unfettered discretion if it is "*in* [the party's] *sole discretion*"). The "core" of the Agreement was not, as Plaintiffs assert, an obligation that Robinhood accept all trades at all times; the Agreement provides exactly the opposite.

Plaintiffs engage in more semantic nonsense in arguing that this broad language must mean something other than what it says because granting Robinhood complete discretion to decline trades would somehow convert

Robinhood into a discretionary broker.  (Br. 53.)  As explained above, the difference between a discretionary broker and a nondiscretionary broker turns on whether the broker gives advice to the customer and is permitted to make trades on the customer's account without transaction-by-transaction direction.  *See, e.g.*, *Twomey*, 69 Cal. Rptr. at 241.  There is no legal or logical reason to conclude that a nondiscretionary broker has an obligation to accept every trade a customer wants to make, particularly where—as here—the contract says the opposite.

None of the cases cited by Plaintiffs suggests otherwise.  In each of those cases, there were specific contractual limits on the scope of the defendant's discretion that are not present here.  *See, e.g.*, *Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*, 859 F. Supp. 2d 1138, 1153 (E.D. Cal. 2012) (noting that defendant had discretion over the *pace* of completing the contract, not whether completion could be suspended); *Hebei Hengbo New Materials Tech. Co. v. Apple, Inc*., 344 F. Supp. 3d 1111, 1129 (N.D. Cal. 2018) (holding that "[t]he plain language of this provision *clearly does not* confer unfettered discretion" (emphasis added)); *Haggarty v. Wells Fargo Bank, N.A.*, 2011 WL 445183, at *2 (N.D. Cal. Feb. 2, 2011) (noting that contract gave discretion over how or when to change a mortgage index rather than absolute discretion as to whether to change it); *Stonebrae*, 2010 WL 1460208, at *5 (involving allegedly improper conduct that was not expressly permitted by the contract).

51

*Second*, Plaintiffs argue that the Agreement must be illusory if Robinhood had unfettered discretion to decline customer trades.  (Br. 54.)  The District Court correctly rejected this argument.  (Op. 54.)  Under California law, an agreement is illusory only if, as a whole, it provides no consideration whatsoever. *See Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 510 (Cal. 1985); *see also Third Story Music, Inc. v. Waits*, 48 Cal. Rptr. 747, 753 (Ct. App. 1995) (the implied covenant applies to discretion-granting provisions only in the "rare instances when reading the provision literally would . . . result in an unenforceable, illusory agreement").  That is not the case here.  As the District Court ruled, Plaintiffs have acknowledged many benefits that Robinhood provides its customers other than placing securities purchase orders, such as access to cash management services, "investment tools and education to help . . . make decisions" and Robinhood's podcast, newsletter and website publications.  (Op. 51 (citing Compl. ¶¶123, 317-319; Robinhood Customer Relationship Summary (A380) 2).)  The Agreement is supported by other consideration and thus is not illusory.

For these reasons, the District Court's dismissal of Plaintiffs' claim for a breach of the implied covenant of good faith and fair dealing (Count V) should be affirmed.

**V.    ROBINHOOD DID NOT BREACH ANY IMPLIED DUTY OF CARE (COUNT IV).**

Plaintiffs' breach of implied duty of care claim fails for the same reason as their good faith and fair dealing claim—it is precluded by the express terms of the Agreement.  (Agmt. §§5.F, 16.)  "The courts will not imply a better agreement for the parties than they themselves have been satisfied to enter into, or rewrite contracts whenever they operate harshly."  *Series AGI W. Linn of Appian Grp. Invs. DE, LLC v. Eves*, 158 Cal. Rptr. 3d 193, 204 (Ct. App. 2013).

Plaintiffs argue the District Court erred because the "*term* at issue is express:  Robinhood agreed to provide brokerage services to its clients."  (Br. 55.)  This argument makes no sense—Plaintiffs fail even to identify any express "term."  If, counterfactually, there *were* an express term requiring Robinhood to provide any brokerage services requested by a client at any time for any reason, then any claim in this case related to the PCO limits would be a claim for breach of contract.  Of course, there is no such "express term," which is why there is no breach of contract claim.  To the contrary, the relevant "express term" is the term that gave Robinhood the right to do exactly what it did—decline trades—at any time, for any reason, with or without notice to the customer.  (Agmt. §§5.F, 16.)  No implied duty claim can exist where, as here, the express terms of the contract *permit* the

conduct constituting the alleged breach.  *See Series AGI*, 158 Cal. Rptr. 3d at 203.

The dismissal of Count IV should be affirmed.[22]

## VI.  ROBINHOOD MARKETS DID NOT TORTIOUSLY INTERFERE WITH THE ROBINHOOD CUSTOMER AGREEMENT (COUNT VI).

On appeal, Plaintiffs repeat their perplexing claim that Robinhood

Markets tortiously interfered with Plaintiffs' contractual relationship with

Robinhood Financial and Robinhood Securities.  To plead such a claim under

California law,[23] Plaintiffs must allege, *inter alia*, the "actual breach or disruption

of the contractual relationship."  *Ixchel Pharma, LLC v. Biogen, Inc*., 470 P.3d

571, 575 (Cal. 2020).  Plaintiffs cannot meet this element.

As the District Court noted, Plaintiffs failed to point to any "express"

or "identifiable" contract provision that Robinhood allegedly breached during the

proceedings below.  (Br. 56 (citing Op. 59).)  That remains the case on appeal.

Plaintiffs argue that this is irrelevant because they allege that Robinhood Markets

"procured the breaches of *implied* contractual duties" by Robinhood Financial and

Robinhood Securities.  (*Id.* (emphasis added.))  In other words, Plaintiffs' tortious

---

[22] Plaintiffs imply that other actions taken by Robinhood Financial and Robinhood Securities, such as "failing to manage risk within the brokerage," also led to a breach of implied duties.  (Br. 55.)  But none of these acts would have affected Plaintiffs "absent Robinhood's exercise of its express right to impose the PCO restriction.  And Plaintiffs cannot sue in federal court for actions that never harmed them."  (Op. 56 n.21.)

[23] Plaintiffs argue their tortious interference claim only under California law—inconsistent with their choice-of-law argument.  Therefore, Plaintiffs waived any arguments under Florida law.

interference claim presumes that Robinhood breached the implied duty of care (Count IV) or the implied covenant of good faith and fair dealing (Count V). (Br. 56 (citing Compl. ¶338).) But for the reasons set forth above, *see supra* Sections V & VI, Plaintiffs fail to plead either of those claims and their tortious interference claim fails for that reason alone.

Plaintiffs' tortious interference claim fails for the additional reason that they do not allege in the Complaint—nor do they argue on appeal—that Robinhood Markets engaged in any "intentional acts designed to induce a breach or disruption of the contractual relationship." *Ixchel*, 470 P.3d at 575. To the contrary, Plaintiffs concede in the Amended Complaint that the decision to implement a PCO on the Suspended Stocks was made by Robinhood *Securities*, not the parent entity, Robinhood Markets. (Compl. ¶28.)

For each of these reasons, the Court should affirm the District Court's dismissal of the tortious interference claim against Robinhood Markets (Count VI).

## VII.  LEAVE TO AMEND SHOULD BE DENIED.

Plaintiffs already have had two opportunities to amend their Complaint, including after reviewing tens of thousands of pages of discovery. (Op. 62-65.) Nevertheless, Plaintiffs seek leave to amend the Complaint for a third time. (Br. 56.) There are, however, no allegations that can remedy the legal deficiencies in Plaintiffs' Complaint. Plaintiffs cannot plead a cognizable tort duty

that Robinhood owed to Plaintiffs, and also cannot circumvent the express terms of the Agreement.  Thus, this Court should affirm the District Court's dismissal of the Complaint with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully submit that the District Court's Opinion should be affirmed in its entirety.

Dated:  August 29, 2022

Respectfully submitted,

**CRAVATH, SWAINE & MOORE LLP**

_____
*/s/ Kevin J. Orsini*

Antony L. Ryan
Kevin J. Orsini
Brittany L. Sukiennik
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
bsukiennik@cravath.com

**HUNTON ANDREWS KURTH LLP**

Samuel A. Danon (FBN 892671)
María Castellanos Alvarado (FBN 116545)
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
sdanon@huntonak.com
mcastellanos@hunton.com

*Attorneys for Defendants-Appellees*
Robinhood Financial LLC, Robinhood
Securities, LLC and Robinhood Markets,
Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

**Type-Volume:** This brief complies with the type-volume limits of FRAP 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by FRAP 32(f) and 11th Cir. Rule 32-4, this document contains 12,993 words.

**Typeface and Type-Style:** This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.



*/s/ Kevin J. Orsini*

Kevin J. Orsini

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on August 29, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served on counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically generated notices of filing.



*/s/ Kevin J. Orsini*

Kevin J. Orsini